EDWIN S. GRAY

*v.*

SOPHIA TROUTMAN, EXRX.

*Filed at Springfield October 14, 1895.*

1. APPEALS AND ERRORS—*error in instructions at former trial not prejudicial.* Error in instructions is not prejudicial where the jury failed to find a verdict, and the decree was rendered upon a hearing before the court without a jury.

2. SAME—*when findings of fact of trial court will stand.* Findings of the trial court in an equity suit will not be disturbed, on appeal, when sustained by the evidence, and no theory appears upon which the conclusions reached can be dissented from.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. EDWARD P. VAIL, Judge, presiding.

MILLS BROS., and BUCKINGHAM & SCHROLL, for plaintiff in error.

CREA & EWING, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was a bill in chancery, brought by Michael Troutman and Sophia Troutman, his wife, against Edwin S. Gray, to set aside and cancel a deed executed by the complainants to the defendant, on the ground that at the time of its execution Michael Troutman, the principal grantor, was of unsound mind, and that by reason of such unsoundness of mind he was incapable of transacting ordinary business. The case made by the bill is substantially as follows:

In January, 1891, Michael Troutman, then a resident of Decatur, Macon county, bought a farm in Coles county, consisting of some two hundred acres of land, the price paid being an average of $29 per acre, or $5800 in all. The land, at the time, was encumbered by a mortgage for $3000, Troutman taking the land subject to the mortgage and deducting the amount of the encumbrance from the

purchase money paid. After the purchase Troutman expended in the erection of a dwelling house and the putting in of tile drains on the farm the sum of about $4000, thus making the entire cost of the farm to him, including the $3000 mortgage, about $9800. Troutman personally superintended the making of the improvements, and while doing so spent a considerable portion of his time on the farm. He found, as it seems, that the tiling to be done was more difficult and expensive than he had anticipated, and he became greatly harassed and worried while superintending the improvements. It is alleged in the bill that he was then a victim of a wearing and irritating disease, which, in connection with the worry and harassment of superintending the improvements, rendered him nervous and excitable, and at length so seriously impaired his nervous faculties that he became of unsound mind and wholly unfit for the transaction of business; that his mental unsoundness took the form of hallucinations, one of which was that his farm was going to ruin and bankrupt him; that under the influence of such hallucination he conceived the idea that he must sell the farm at any price to avoid ruin and bankruptcy. He seems to have entered into a verbal contract with Gray, the defendant, to lease the farm to him for a term of five years, commencing at a time then in the future, and it is alleged that a part of his hallucination was that a sale of the land must be made to Gray so as to avoid complications and lawsuits with him. It appears that Gray was with Troutman more or less, both in Decatur and on the farm in Coles county, and it is alleged, not only that he acquired an ascendancy over the mind of Troutman, but also that he was well aware of the diseased condition of Troutman's mind.

The bill alleges that Sophia Troutman did all in her power to restore the mental equilibrium of her husband, but without avail, and that she requested Gray not to buy the farm, informing him of her husband's hallucination in reference thereto and that there was no necessity for the

sale; that, notwithstanding, Gray, on or about November 4, 1891, entered into an agreement with Troutman for the purchase of the farm for $1000 cash and the assumption of the $3000 mortgage; that at that time the farm, with the improvements thereon, was worth $50 per acre, or $10,000; that Troutman was at times in such a frenzied condition as to attempt to commit suicide; that when he requested his wife to join with him in the conveyance to Gray he said to her that if he did not sell the land he must die, and that she, fully believing that in his unsound mental condition he would commit suicide if she refused to join with him in the deed, was thereby induced finally to yield, and so joined with her husband in the execution and acknowledgment of the deed; that the actual consideration paid for the land by Gray was only $1000 in cash and the assumption of the mortgage. The bill alleges that the execution of the deed by Troutman was the act and deed of one wholly incapable, in law, of executing such an instrument. It appears that a few days after the deed was executed a surgical operation was performed upon Troutman by which a cancer was removed from his rectum, and that after his death, which took place January 22, 1892, a tumor of considerable size was found to have developed upon his brain.

The bill prays for a decree declaring that the conveyance from the complainants to Gray is wholly void, and ordering Gray to reconvey the land to Troutman. The bill was filed January 15, 1892, and though both Mr. and Mrs. Troutman were named as complainants, it was in fact brought by Mrs. Troutman, she joining her husband with her as co-complainant. In her prayer for an injunction restraining the tenant in possession from surrendering the lands to Gray, she alleges that her husband was then incapable of transacting any business whatever, and prays that the injuction issue upon her entering into an injunction bond alone.

On the 22d day of January, 1892, Michael Troutman died, leaving a last will and testament, by which he devised and bequeathed all his property to his wife, and she thereupon suggested his death on the record, and filed her supplemental bill making herself sole complainant, as the devisee and legatee of her deceased husband.

The defendant answered, denying the equities of the bill, and a replication being filed the cause was tried twice by a jury, and at each trial the jury failed to agree, and were consequently discharged without a verdict. Upon the discharge of the second jury the complainant entered her motion that the judge of the circuit court hear and decide the case upon the evidence already heard on the second trial, without the intervention of a jury. The defendant thereupon entered his cross-motion to have the question of the mental capacity of Troutman to execute the deed in question submitted to another jury, but the court overruled the cross-motion of the defendant and the motion of the complainant was allowed. The court thereupon considered the case upon the evidence adduced and heard at the second trial, and upon such hearing found, among other things, that at the time of the execution of the deed in question Troutman was laboring under the insane hallucination alleged in the bill, and was wholly unfit and incapable to deal with or in any manner dispose of the farm in question, and that the defendant, at the time he received the conveyance, was aware of Troutman's insane hallucination in relation thereto. It was thereupon decreed that the equities of the case were with the complainant, that the deed in question was null and void and a cloud upon the complainant's title to the land, and that it be vacated, canceled and set aside and be expunged from the records of Coles county. The defendant was ordered to execute to the complainant a quit-claim deed conveying the land to her, and it was decreed that in default of such conveyance the master in chancery execute and deliver to the

complainant a quit-claim deed in his stead. To reverse this decree the defendant has now brought the record to this court by writ of error.

While the refusal of the court to submit the question of the sanity of Michael Troutman to another jury for trial is assigned for error, no point is made upon that assignment of error by counsel for the plaintiff in error in their argument, and we may therefore properly assume that they are now content with the ruling of the court in that respect.

Some complaint is made of the instructions given by the court to the jury on the second trial, but we are unable to see how the plaintiff in error is now in a position to call the propriety of those instructions in question. Even if they were erroneous he could not have been prejudiced thereby, as the jury failed to find a verdict; and even if they were improperly instructed, and so misled, their failure to find a verdict has made it impossible that their erroneous impressions of the law could have had any unfavorable effect upon his rights. The hearing which resulted in the decree was before the court without a jury, and there is nothing in the record, and certainly nothing in the instructions given to the jury upon the abortive trial, which could furnish any legal criterion as to the propositions of law by which the court was guided in deciding the case. It must also be noticed that while counsel have made some complaints as to the instructions, they have not taken the pains to point out wherein any instruction was erroneous, and we do not feel called upon to explore the record in search of errors which counsel have not seen fit to point out or bring to light.

The only material questions presented by the record for our consideration are mere questions of fact, and after giving to the case such patient and careful study as we have been able, we are of the opinion that the evidence sustains the decree. The evidence is exceedingly voluminous and to a considerable degree conflicting.

No useful purpose would be served by our reviewing it in detail, even if the volume of the testimony were not an insuperable barrier to our doing so. It is to be remembered that the learned judge who rendered the decree heard the evidence of the witnesses twice, and was consequently in a much more favorable position to pass upon mere questions of fact than we can be. Our investigations, made in the light of the able and instructive briefs and arguments of counsel, have failed to develop any theory upon which we can safely and properly dissent from the conclusions of the court below. We are therefore disposed to hold that the decree is the just and proper result from the testimony, and it will therefore be affirmed.

*Decree affirmed.*